**EDWARDS et al. v. LATHAN (UNITED STATES FIDELITY & GUARANTY CO., Intervenor).**

No. 672.

District Court, W. D. Louisiana, Shreveport Division.

May 12, 1938.

J. Cleo Thompson, of Dallas, Tex., and Blanchard, Goldstein, Walker & O'Quin, of Shreveport, La., for complainants.

R. L. Williams, of Arcadia, La., for respondent.

Theus, Grisham, Davis & Leigh, of Monroe, La., for intervener.

DAWKINS, District Judge.

Will Lathan, a colored war veteran, died intestate in 1921 and there was subsequently awarded to his estate by the Veterans' Bureau, the sum of $5260, as war risk insurance. The defendant was appointed administratrix by the State Court of Bienville Parish, and upon allegations and proofs submitted by her and others, to the effect that deceased left no closer relatives, they, as aunts and uncles, were adjudged by the State Court on July 20, 1932, to be lawful heirs and to receive the proceeds of the policy.

On September 4, 1935, the present suit was filed by Delia Priest Edwards, a citizen of Texas, alleging that she was a natural sister of deceased, against Julia Lathan, individually and as administratrix, to set aside the judgment of the Probate Court of the State and to recover the full proceeds of the policy, as nearest of kin and sole heir of her alleged brother. She charged that the judgment of the State court was fraudulently obtained, in that defendant, together with other beneficiaries thereunder, wilfully misrepresented and swore before the court that deceased had no lawful ascendants or descendants, brothers or sisters, and that they were the nearest of kin, entitled to inherit the estate, when they well knew of petitioner's existence, whereabouts and relationship at the time; and that plaintiff had no knowledge of said proceedings or the fraud committed until about March 1, 1935, when she immediately demanded that defendant pay over to her all of the funds of said estate.

A plea of prescription filed by the defendant was overruled, but a rehearing was asked, and on June 1, 1936, the United States Fidelity & Guaranty Company, surety on defendant's bond as administratrix, intervened in the suit.

Answer was filed by defendant Julia Lathan on March 5, 1937.

The plea of prescription was finally denied with leave to plead laches, which was done, and together with the plea of estoppel, was referred to the merits. The case was later tried and submitted on stipulations and other evidence, from which I find the facts as follows:

Plaintiff and the deceased, Will Lathan, were sister and brother of the full blood, daughter and son, respectively, of Luella Redding, who never married, and of Alfred Priest, a married man, at the conception of both children, and who continued so until long after the death of the mother, Luella Redding. Both parents died before Will Lathan, and the lawful wife of Alfred Priest, Luella Redding and Julia Lathan, were all sisters.

Plaintiff in 1891, when a small child about four years old, moved to Texas with one of her aunts, and has continued to reside there ever since. When Will Lathan, the former soldier, became seriously ill, shortly before his death in 1921, the defendant Julia Lathan, communicated with the plaintiff by telegram and the latter, with her husband, came to Louisiana and visited her relatives in the community of Bienville Parish where she had been born. A second visit was made when her brother died some months later. During the time Will Lathan was in France plaintiff and Julia Lathan, defendant, corresponded frequently and the former has continued since then to receive her mail at the same address. The last letter from Julia Lathan was received by plaintiff sometime in 1924.

Many years after Will Lathan's death in 1921 the Veterans' Bureau awarded the estate the insurance, which, as above stated, was paid over to Julia Lathan as administratrix in 1932 and presumably distributed to the aunts and uncles, recognized by the State court as his lawful heirs.

The first knowledge plaintiff had that such an award had been made, or of the judgment of the State court in the succession of Will Lathan, was obtained from a letter dated March 18, 1935, from a lawyer in Arcadia, Bienville Parish, by the name

of Taylor, who offered to represent plaintiff in an effort to recover what might be due her.

Shortly thereafter she came to Bienville Parish, made demand upon defendant for the money and was given the sum of $200.00. Upon returning to Texas, plaintiff got in touch with the local Veterans' Bureau in Dallas, and thereafter employed J. Cleo Thompson, one of her present counsel, who filed this suit on September 4, 1935.

■ It seems clear that Julia Lathan and others who testified before the Probate Court knew all the facts about plaintiff and her brother and had every reason to believe she was still alive and could be reached by mail or telegraph. They either suppressed these facts or acted upon improper advice in falsely representing to the State court that Will Lathan had no sister or other relation closer than themselves. The result was to perpetrate either an intended or legal fraud against plaintiff which justifies the annulling of the State Court judgment, if she is legally capable of inheriting from her brother, and the pleas of laches and estoppel are found unavailing. Bolden v. Sloss-Sheffield S. & I. Co., 215 Ala. 334, 110 So. 574, 49 A.L.R. 1206; Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870; Johnson v. Waters, 111 U.S. 640, 4 S.Ct. 619, 28 L.Ed. 547; Waterman v. Canal Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80.

### Pleas of Laches and Estoppel.

■ From the circumstances stated, I am of the view that the suit was filed within a reasonable time after the plaintiff learned the facts and there is no substantial basis to hold her guilty of laches, considering the fact that she and her husband were the usual type of colored people, of small means, with little education, living in the country, at a great distance from the scene where the alleged fraud had been committed. Before filing the suit it was necessary for her counsel to investigate the records at Arcadia, the facts of her relationship to deceased, as well as of defendant and the other claimants, and the proceedings in the State court. Nothing happened in the meantime to prejudice the rights either of the defendant or the intervenor. The plea of laches should, therefore, be overruled. Neither do I find anything to support the plea of estoppel, which has not been discussed in brief by counsel.

### On the Merits.

■ At the argument, the court raised the question as to how far, if at all, the surety on an administrator's bond is protected by the decree of a Probate court recognizing heirs and directing division among them of an estate. However, defendant's counsel has not discussed or furnished any authority on this point. It would seem that the surety on such a bond takes his chances as to the integrity of his principal, for ordinarily, it is signed before the question of heirship comes up, and if, thereafter, through fraud or misconduct the latter causes an unlawful distribution or disposition, the surety is responsible. Brandt on Suretyship and Guaranty, par. 712; 11 R.C.L. 306, Sec. 354.

This brings us to the right of plaintiff to inherit from her deceased brother. The following are the pertinent articles of the Louisiana Revised Civil Code: 198, 202, 204, 206, 212, 920 and 923.

■ All of the above articles, except the last, deal with the rights of illegitimate children, in so far as they arise from or through the mother or father, or other ascendants, while Art. No. 923 applies to and is a specific and independent declaration of rights as between illegitimate or natural brothers and sisters, inter se, where the mother and father have previously died. The stipulated facts are that the mother of plaintiff and the deceased soldier was never married, and they could have inherited from her upon proof of informal acknowledgment, regardless of the status of the father. Taylor v. Allen, 151 La. 82, 91 So. 635; R.C.C. art. 212; Lange v. Richou, 6 La. 560. In the present case, both plaintiff and the deceased were adulterous bastards as to their father, who was a married man at the time of their conception, but this did not affect inheritance from the mother. Jobert v. Pitot, 4 La.Ann. 305; Dupre v. Caruthers, 6 La. Ann. 156. It was only necessary for plaintiff to prove her relationship of sister by showing that they were born of the same mother, who informally acknowledged them as such, in order to entitle her to inherit her brother's estate to the exclusion of natural aunts and uncles. This proof created the right of inheritance direct from the brother, not by representation

from the mother, for the law (Art. 923) says: "If the father and mother of the natural child died before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants."

█ The only requisite condition apparently being that both parents should have previously died. The word "pass" undoubtedly has the meaning equivalent of saying that the estate shall be inherited by the natural brothers and sisters. See, also, Fennell v. U. S., 5 Cir., 67 F.2d 768.

My conclusion is that from the facts stipulated and proven in the present case, the plaintiff has established her right to inherit the entire estate of her deceased brother, Will Lathan, to the exclusion of defendant, Julia Lathan, and the other aunts and uncles.

The judgment of the State court should, therefore, be annulled and plaintiff should recover of defendant, Julia Lathan, individually and as administratrix, the full amount of the funds received from the United States government as war risk insurance, with lawful interest.

Proper decree should be presented.